REICH *vs.* THE STATE OF GEORGIA.

[WARNER, Chief Justice, being engaged in presiding over the senate organized as a court of impeachment, did not sit in this case.]

1. The indictment not being demurred to, and the evidence being that the father of the minor was dead, and that he had no guardian, and his mother gave no permission to sell liquors to him, this case does not fall within the ruling in *Newman vs. The State,* and *Heyman vs. The State,* decided this term.

2. Where the indictment sets out the names of the grand jurors who found it with reasonable accuracy, leaving no doubt of the identity of person, any slight mistake in their names on the minutes is immaterial, and may be corrected at any time.

3. Immaterial evidence should be excluded, and objections to material evidence will not be considered to operate as error if the same evidence in substance afterwards gets before the jury.

4. The sale of spirituous liquors to a minor is sufficient to convict of the offense, unless the defendant, after due inquiry, was honestly mistaken in respect to the minor's age, and to show such mistake, while the dealer need not inquire of the parent alone as to the age of the person to whom he sells, yet he must exercise special diligence to ascertain the truth ; and such diligence will not be manifested by inquiry of the minor alone, or of such persons as have no better means of knowing than the dealer, but it must be of such persons as to satisfy the jury that the inquiry was honest and not a mere subterfuge or-cover for crime.

5. The defendant has a right to make his statement, and to that statement the jury may give such weight as in their judgment it may be entitled to, dependent ordinarily upon its consistency, its natural-ness and its inherent probabilities; and a charge to that effect was not erroneous—certainly not, prior to the act of 1879; and this offense and trial were before that act.

Criminal law. Indictment. Evidence. Before Judge CRAWFORD. Muscogee Superior Court. May Term, 1879

Reich was indicted for selling liquor to a minor, one C. B. Lloyd. The indictment charged that on April 20th, 1879, Reich did "sell to one C. B. Lloyd, a minor son of Mary E. Lloyd, a certain quantity of spirituous liquors, to-wit : one half gill, without first obtaining the authority of the said Mary E. Lloyd, the mother of said minor, C. B. Lloyd." No demurrer was filed to this indictment, but a special plea in abatement to the effect that T. J. S. Kimbrough, W. R. Bedell, and G. W. Yarbrough appeared in the indictment as three of the grand jurors who found the bill, but no such persons appeared from the records to have been sworn. On the hearing, it appeared from the minutes that T. J. Kimbrough, W. A. Bedell, and G. M. Yarbrough were sworn as grand jurors. The court inspected the indictment, and decided that the middle initial of Yarbrough's name, as written there was correctly written—that is M, and the objection ceased as to him. As to the other two, the court allowed parol testimony to show that the men sworn were identical with those mentioned in the indictment, in spite of inaccuracies in entering them. To this defendant excepted.

Lloyd, the minor, testified that he had frequently purchased liquor from the defendant, in April and May, 1879, that he was a minor son of Mary E. Lloyd, who was his only parent, and that he had no guardian. On cross-examination he stated that he had been in defendant's saloon on Saturday night before the trial, that he was refused liquor, but another who was with him had bought and given him some. (This was in June, 1879). Defendant's counsel proposed to ask who the man was; it was refused by the court. The witness was also asked how he came to go before the grand jury and the court rejected the answer. The witness stated that he had been before the grand jury and had been examined. Defendant's counsel proposed to ask him, "Who asked you about these men?" The court ruled out the question. Defendant's counsel insisted that it should go in to affect the credibility of the witness. The

court remarked, "I will give you the benefit of the point." (In a note he states that he used the expression as a polite mode of overruling counsel, and to prevent prejudicing the minds of the jury). These rulings were assigned as error, among others.

In the statement of defendant, he alleged that he inquired about Lloyd's age "from somebody else—all the young fellows—and I inquired very often, and they all told me he was 21."

The jury found defendant guilty, and he excepted. For the other facts see the opinion.

J. M. SMITH; W. A. LITTLE; THORNTON & GRIMES, for plaintiff in error.

H. BUSSEY, solicitor-general, by JOHN PEABODY, for the state.

JACKSON, Justice.

1. In this case no demurrer was made to the bill of indictment, and therefore the ruling in the cases of *Newman vs. The State* and of *Heyman vs. The State* does not control it. The evidence is that the minor had no guardian, that his father was dead, and that his mother gave him no leave to buy, and the grocer no leave to sell him, spirituous liquors.

No motion was made for a new trial, and the case turns purely upon exceptions to rulings of the court. These are confusedly set out, to say the least, but we will dispose of them as we gather them with some difficulty from the bill of exceptions, and as we understand them.

2. The first objection is in respect to the grand jurors. There seems to be no doubt that the proper persons found the indictment true, but their names did not appear exactly on the minutes as identical with the names on the indictment. The minutes can be corrected at any time so as to speak the truth. If not done before the trial, it may be

done *nunc pro tunc* subsequently thereto. As to middle names the law cares little; as to wrong spelling, less; and as to slight inaccuracies, they are passed by as immaterial.

The important question is, did the men chosen as grand jurors act and find the bill true? Are those who found the charge true identical with those who were drawn to pass upon the charge? The question is not so much *idem sonans* as it is *idem persona;* and there is no doubt, with the explanation of the judge, that the same persons who found the bill were drawn and put on the minutes to pass on it. 18 *Ga.*, 738 ; 58 *Ga.*, 35.

2. The next series of objections is in respect to the evidence of the witness, Lloyd.

This series, on analyzing it, will be found to consist of objections because counsel were not allowed to elicit immaterial evidence, or where at all material, the evidence was afterwards disclosed in another way, and the defendant got the benefit of it, or exceptions to the remark of the court in ruling such evidence out that he would give them the benefit of the point, which was merely, as the judge certifies, a polite way of overruling the counsel. We fail to see error in any of these rulings of the court.

4. But the great exceptions seem to be to the charge of the court, which are made to various portions of it by specifying from line to line, without setting it out in words again, so that this court may see every objection plainly before it. In passing it may be well to remark, that it would much facilitate this court in the duty of reviewing a case if counsel would specify their points by alleging " because the court erred in charging as follows," and then giving the extract in words. But by inspecting the charge as lined in this bill of exceptions, and by applying the crucible of analysis to the various exceptions made to the charge between certain lines, we think that the errors complained of may be reduced to two specifications. 1st. That the court charged that if the jury believed the young man to whom the

liquor was sold to have been a minor, then the defendant, if he sold it to him, was guilty unless he used special diligence to ascertain whether he was or not; that such special diligence would not be satisfied by inquiry of the minor himself or other persons as little likely to know as the barkeeper himself, but should be such as to satisfy the jury that the defendant was inquiring honestly to ascertain truth, and not as a mere subterfuge to cover crime ; that the inquiry need not be made to the parent alone, but to some source whence he might reasonably expect to elicit the truth and by which he might reasonably expect to ascertain it ; and, 2nd, that sufficient weight was not given to the prisoner's statement.

We see no error in the first exception. The current of authority in the other states is that in such cases, where the object of the statute is the protection of minors from ruinous habits, the bare fact that the sale is to the minor concludes the case. The liquor dealer sells at his peril, and no matter what inquiry he makes, if he makes a mistake, however honest it may be, he is guilty. But in our own state a different rule, and a more lenient one, has been adopted, and the court below followed it. In the case of *Stern vs. The State* the rule of special diligence, in order to show an honest mistake, was laid down, and every element in the charge of the judge in this case was there laid down. See 53 *Ga.*, 226. That, too, was the playing billiards, not so bad as selling liquors to minors. Bad, as leading to drinking and gambling, but not so ruinous as the last two. The law ought to require special diligence in the retailer, when he sells to the young, to ascertain that the buyer is a man over twenty-one, and no longer under parents and guardians.

The principle that the sale to the minor makes a *prima facie* case of guilt was laid down by this court by analogy in the case of *Amos vs. The State*, in 34 *Ga.*, 531. There it was held that when the state proved that the liquor was sold to the slave it was enough. The seller must then show

that the owner gave license, or the furnisher of the liquors must show that he was the owner or employer of the slave, which seems to have been the point at issue in that case.

On the whole, we fail to detect any error in the presentation of the case to the jury by the presiding judge, and believe his view has been sustained by the prior rulings of analogous cases, as well as by great principles of public policy.

5. Nor do we see error in the charge respecting the defendant's statement. Such statement was not equal to evidence prior to the act of the last general assembly, and this case was tried and the offence was committed prior to that act. Indeed, it is probably right even under the act of 1879. The charge is in these words : " Under the law the prisoner is permitted to make a statement, and to that statement the jury is to give such weight as in their judgment the same may be entitled to. Ordinarily it is to have the force which it shows by its consistency, its naturalness and its inherent probabilities—no more, no less."

Even a witness's statement is entitled to about that degree of weight; but the latter clause is qualified by the first part of this charge, and the whole gives the spirit of the act as we construed it prior to the amendment of the last legislature. Whether that amendment, which allows a mere statement of the party charged with crime to overthrow the sworn testimony of witnesses, wholly disinterested, be wise or not, it does not become us to say. Certainly full force was given by the court below to the law as it stood construed before that act, and that is not retroactive. 43 *Ga.*, 368.

Judgment affirmed.