## MANNING *vs.* MITCHERSON.

1. To acquire property in animals, birds and fishes which are wild by nature, one must have them in his actual possession, custody and control; and this he may do by training, domesticating or confining them.

(*a.*) A woman had a canary bird which she had tamed, and of which she had had possession for about two years. It knew its name, and when called by its owner would answer the call. On one occasion it had left its cage, and after having been gone for a day or two, had returned:

*Held,* that such facts gave a right of property in the bird; and upon its having disappeared without the knowledge or consent of the owner, and having been received and taken possession of by another who kept it in confinement, the owner could recover it by possessory warrant.

2. A possessory warrant will lie against any one who receives or takes possession of a personal chattel under a pretended claim and without lawful warrant or authority.

(*a.*) It appearing in this case that the bird was in the power, custody

and control of the husband, and was surrendered by his authority and direction to the officer upon the issuing of a possessory warrant, there was sufficient evidence on that point to support the warrant against the husband, although his wife may have had the personal care of the bird.

3. The judgment of the justice awarding possession to the plaintiff in this case was not against the weight of the evidence ; and the judgment dismissing the *certiorari* was right.

January 23, 1883.

Possessory Warrant. Actions. Birds. Property. Husband and Wife. Before Judge TOMPKINS. McIntosh Superior Court. May Term, 1882.

Mrs. Catherine Mitcherson sued out a possessory warrant against Patrick Manning to recover possession of a canary bird. On the trial before the justice, the evidence on behalf of the plaintiff was, in brief, as follows : The bird was obtained by the plaintiff from the captain of a vessel, and had been in her possession for about two years. On the 27th of December, 1881, it was discovered that the bird was missing, and the door of the cage in which it was kept was found open. It had escaped once before, and after remaining away for a day or two had returned. It was called "Sweet," and would answer to its name. It had a peculiar crest on its head, which was divided in the middle by Mrs. Mitcherson, as one would part a person's hair. On January 2, 1882, plaintiff learned that the bird was in possession of Manning, and sent to him for it, but the latter refused to deliver possession. The identity of "Sweet" was very positively sworn to by the plaintiff and other witnesses on her behalf. Upon the return of the possessory warrant, the bird was not brought into court. The justice asked for it, and defendant replied that he did not know that it was necessary to bring the bird up to court. The justice read §4038 of the Code to him ; he returned with the officer to give the latter the bird ; the constable returned with it in his possession and testified that it was given to him by a servant at Man-

ning's house, and that when he had previously sought to execute the warrant, Manning refused to give up the bird.

The evidence on behalf of defendant was, in brief, as follows: Mrs. Manning had a canary bird which was either this bird or so closely resembled it that they could not be distinguished, the resemblance extending even to the peculiar mode of wearing its head-feathers. Defend- ant's bird escaped in October, 1881. On the night of January 1, 1882, one Brown returned to her the bird in dispute, it having entered his kitchen and been caught by one of his servants. The witnesses on behalf of defend- ant, all testified that to the best of their knowledge and belief this was her bird. It remained in her possession until taken by the constable, and was not in the posses- sion, custody or control of her husband.

W. R. Gignilliat, Esq., counsel for plaintiff, by consent, made the following statement in his place: "Mr. Man- ning told me that Mrs. Mitcherson had demanded the bird in such an insolent manner as to hurt his feelings very deeply; that if she had asked for the bird in a decent way, she could have had 'her' bird, or 'the' bird, I am not certain which, without any trouble, but that she had treated him in the matter as though he was not worthy to walk on the same ground with her folks."

The justice awarded possession to the plaintiff. De- fendant carried the case by *certiorari* to the superior court, where the judgment of the magistrate was affirmed, and defendant excepted.

W. A. WAY; P. W. MELDRIM, by W. G. CHARLTON, for plaintiff in error.

W. R. GIGNILLIAT; LESTER & RAVENEL, for defend- ant.

CRAWFORD, Justice.

The questions submitted for our adjudication by this

record and insisted on by counsel for the plaintiff in error, are substantially:

(1.) Whether such a property right can exist in a canary bird as to make it the subject matter of a possessory warrant.

(2.) Whether, even if this be so, such warrant will lie against the husband, to recover property in the possession, custody or control of the wife.

(3.) Whether the notary public, and *ex-officio* justice of the peace, did not commit error in his decision in this case, in giving judgment in favor of the plaintiff in the warrant, against the weight of evidence submitted on the trial.

1. The law of Georgia is, that to have property in animals, birds and fishes which are wild by nature, one must have them within his actual possession, custody or control, and this he may do by taming, domesticating, or confining them.

The answer of the *ex-officio* justice of the peace in this case, the same being a *certiorari* and no traverse thereof, must be taken as true, and it says, that according to the testimony of all the witnesses the bird in controversy was shown to have been tamed. It was also testified that it had been in the possession of the plaintiff in the warrant about two years; that it knew its name, and when called by its owner, would answer the call; that it had left its cage on one occasion, and after having been gone a day or two returned; that on the 27th day of December, before the preceding new year's day, it was missing from its cage, and on the latter day it was received and taken possession of by the defendant, who had kept it in confinement ever since.

Under this evidence, there does not seem to be any question of sufficient possession and dominion over this bird, to create a property right in the plaintiff. To say that if one has a canary bird, mocking bird, parrot, or any other bird so kept, and it should accidentally escape

from its cage to the street, or to a neighboring house, that the first person who caught it would be its owner, is wholly at variance with our views of right and justice. To hold that the traveling organist with his attendant monkey, if it should slip its collar, and go at will out of his immediate possession and control, and be captured by another person, that he would be the true owner and the organist lose all claim to it, is hardly to be expected ; or that the wild animals of a menagerie, should they escape from their owner's immediate possession, would belong to the first person who should subject them to his dominion.

2. Upon the second question presented for our consideration, we hold, that a possessory warrant will lie against any one who receives or takes possession of a personal chattel under a pretended claim, and without lawful warrant or authority. To apply this principle to the facts of this case, as they are set out in the answer of the justice, we must say that, though the wife may possibly have had the personal care of the bird in question, yet it is clear that it was in the power, custody and control of the husband, and was undoubtedly surrendered to the officer by his authority and direction. So that, really no question can be legally made on the point here raised, as the possession of the wife was but the possession of the husband.

3. That the justice gave judgment in favor of the plaintiff in the warrant against the weight of evidence, we do not admit. The testimony for the plaintiff was positive and convincing, and the testimony of Robt. Gignilliat, Esq., given in his place as an attorney, without being sworn, shows that the refusal to return the bird, as stated to him by the defendant himself, was owing more to the offensive manner in which it was demanded, than to any claim of right which he set up by ownership or possession. This statement was not denied or controverted by the defendant, though he was a witness in the case. The weight of the testimony appears to be clearly with the plaintiff.

Under the law and the testimony, there was no error in dismissing the *certiorari*.

Judgment affirmed.