## CROSBY *v.* THE STATE.

In a prosecution under the game law of 1896, for selling "a wild deer and part of a wild deer" during the prohibited season, a prima facie case for the State is not made out by showing merely that the accused had in his possession and sold during that season the meat of a deer; but the State should go further and show affirmatively that the animal in question was "wild."

Submitted October 19,—Decided November 12, 1904.

Accusation of unlawful sale of wild deer.   Before Judge Gale.
City court of Brunswick.   August 22, 1904.

*Atkinson & Dunwody*, for plaintiff in error.

*J. T. Colson, solicitor*, contra.

COBB, J.   The accused was charged with selling "a wild deer
and part of a wild deer," in violation of the game law of 1896·
Acts 1896, p. 74.   The evidence showed that he sold deer meat
during the prohibited season, but there was no evidence to show
whether the meat sold was that of a deer which had been killed
in a wild state, or that of one which had been killed in captivity.
The act declared it unlawful for any person to kill "any wild
deer or fawn" between the first day of January and the first day
of September.   It also declared it unlawful for any person to sell
or offer for sale "any game, bird or animal, or any part of either,
whether dead or alive," that was protected by the act.   It fur-
ther provided that the "possession of any of the animals" during
the period above mentioned should be taken and deemed as prima
facie evidence of a violation of the law.   The purpose of the act
was to protect game, and the wild deer protected by the act is the
wild deer that would be commonly denominated game, that is,
deer in a natural state in the forests.   Deer in captivity, no mat-
ter for what purpose so kept, would not be wild deer within the
meaning of the act, because deer in such a state would not be in
any sense game within the meaning of the game law.   The act
makes possession of the animal protected, during the period of
protection, prima facie evidence of a violation of the law; but
before a prima facie case is made out, the evidence must show
that the animal in possession of the accused is the animal de-
scribed in the act.   Deer in captivity are not usually slain, and
rarely used for purposes of food.   But they may be, and some-
times are, used for food.   Criminal laws are construed strictly,
and especially is this true of laws declaring an isolated fact to be
prima facie evidence of crime.   Construing the law as a whole,
it is not declared that the possession of deer meat is prima facie
evidence of a violation of the act, but the possession of the meat
of the particular kind of deer protected by the act, that is, deer
classed as game — wild deer in its natural state in the forests;
and before the State would be allowed to rest its case upon

proof of mere possession, it must show that the deer was in fact wild. It might be competent for the General Assembly to declare that the possession of deer meat would be prima facie evidence of a violation of the law, but it has not so declared. The evidence was not sufficient to authorize the conviction, and the court erred in not granting a new trial.

*Judgment reversed. All the Justices concur, except Candler and Lamar, JJ., who dissent.*

CANDLER, J. Deer are by nature wild. They are feræ naturæ. While deer are sometimes domesticated and used as pets, pet deer are not used for food. They may be, of course; but seldom, if ever, are they so used. The statute under consideration refers to *wild* deer, that is, deer roaming at large in the forests and used for food. Consequently when the State proves that a person had in possession deer meat to be used as food, the presumption is that it was the flesh of a wild deer. If as matter of fact the deer was a pet deer, this would be matter of defense. The word "wild" was not used in the statute to differentiate deer roaming at large in the forests from those in captivity, but simply in recognition of the fact that practically all deer are wild, the exceptions being so few as to be unimportant. The difference between the two classes of deer was not in the legislative mind, and "wild deer" was synonymous with "deer." If the word "deer" alone had been used, it should have been construed "wild deer," because certainly the legislature would have no right to punish one for killing his own property. Wild deer being the rule, and pet deer the exception, proof of possession and offering for sale of deer meat is sufficient, and the onus of proving the exception is upon the accused. See, in this connection, *Amos* v. *State*, 34 *Ga.* 531; *Reich* v. *State*, 63 *Ga.* 620.

LAMAR, J. Since deer are not treated in law as domestic (Long Point Co. *v.* Anderson, 19 Ont. Rep. 487), it would no doubt require positive or circumstantial evidence to show that a particular deer had lost its natural quality of wildness by being domesticated or confined. Civil Code, § 3073; *Manning* v. *Mitcherson*, 69 *Ga.* 447. But there can be no need to offer evidence and prove that which is true as matter of law. Nor in the first instance will one be required to prove that an animal has the

very quality of wildness which the definitions and classifications of the law recognize as belonging to it. It is no more needed to prove that the deer is a wild animal than that the sheep is a domestic animal. If therefore a right or defense is to be founded upon the fact that a deer is tame, the burden is upon him who relies upon a fact contrary to the real nature of the animal, and contrary to the law, which classifies and treats deer as prima facie wild. Not only does this logical result flow from this definition of the law, but, wildness being the rule and domestication the exception, to force the State to prove a negative and require it to establish that the deer had not been tamed would put on it a burden impossible to be carried. It is a practical and logical impossibility to prove the negative and show that the animal does not belong to somebody. Proof that it does not belong to A, B, or C does not prove that it may not belong to X, Y, or Z. On the other hand, if it be private property or lawfully killed, the possessor, knowing from whom he got it, or when, where, and how he got it, may easily prove the affirmative. *Amos* v. *State*, 34 *Ga.* 531; *Reich* v. *State*, 63 *Ga.* 620; Rex *v.* Turner, 5 M. & S. 206.