72228. FORD v. THE STATE.
(344 SE2d 514)

McMurray, Presiding Judge.

Defendant, a 73-year-old woman, was brought to trial on a citation issued by the Game and Fish Division of the Department of Natural Resources. She was charged with the possession of illegally taken wildlife in violation of OCGA § 27-1-31. Defendant was tried with a co-defendant, her 71-year-old companion. Co-defendant was accused of hunting without a license, hunting without a big game license, possessing illegally taken wildlife and hunting on lands of another without permission. (The last charge pertains to another incident unrelated to this appeal.) The jury found defendant guilty and she was given a 12-months' probated sentence. Co-defendant was found guilty also. However, the merits of his case are the subject of a separate appeal in which he attacks the constitutionality of OCGA §§ 27-2-1; 27-2-6 and 27-3-1. The court ordered, as conditions of probation, that defendant was to pay a $200 fine and that she was not to hunt in the State of Georgia for one year. Defendant moved for a new trial upon the general grounds. The motion was denied and defendant appealed.

A review of the evidence demonstrates the following which we deem necessary to set forth: Defendant and co-defendant travelled around the country together in co-defendant's van (camper). In their travels, they generally lived off of the game which co-defendant killed. Sometimes defendant accompanied co-defendant when he went into the woods to hunt. At other times defendant waited for co-defendant in the van and listened for the sound of game.

When she was not travelling with co-defendant, defendant lived in Arlington, Virginia. Co-defendant lived in his van and stayed "all over." His Virginia driver's license showed an Arlington, Virginia address, but the address was not his (it belonged to a friend of defendant) and co-defendant never lived there. There was a time when defendant and co-defendant tended a garden in Vienna, Virginia. (The garden was located on the property of a friend who lived in a nursing home.) But the pair did not tend the garden for the last two years.

Defendant knew co-defendant did not live at the address appearing on his driver's license. She knew that he was not registered to vote in Virginia or anywhere else. She testified that when he came to Georgia, he lived with Joe Grubbs in Colquitt, Georgia; and she said that during the last two years co-defendant spent more time there than at any other place. Co-defendant testified that he paid rent for the Colquitt address. (The address appears on the security bonds given by

defendant and co-defendant.) He admitted that he paid state income taxes in Virginia, but it was not shown whether defendant knew where co-defendant paid such taxes.

Defendant and co-defendant arrived in south Georgia on March 20, 1985. That day, co-defendant was issued an honorary hunting and fishing license by Tripp Chapman, a salesman for Bainbridge Sporting Goods, Inc. The license bears the Colquitt, Georgia address. The address was given to Chapman by co-defendant. The record does not reflect whether defendant was present when the license was issued to co-defendant.

On the morning of March 27, 1985, co-defendant went hunting upon Corps of Engineers' property. Defendant waited for her companion in the van. He emerged from the woods at 6:18 a.m. (the precise time was recorded in a diary kept by defendant), with a wild turkey. Defendant took pictures of co-defendant holding his prize. Later more pictures were taken on the side of the road and co-defendant held the turkey up in the air for a busload of school children. After defendant and co-defendant ate breakfast at a restaurant, they were approached by a game warden and co-defendant was invited to discuss reports that he had been hunting illegally.

Defendant and co-defendant followed the warden to the sheriff's office where *Miranda* (*Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694)) warnings were given. While co-defendant was being questioned, a game warden went to the van and saw a turkey carcass in plain view. Although he was requested to do so, he refused to produce his hunting licenses. (He said he was exercising his right to remain silent.) Thereupon, the citations were issued to co-defendant and defendant.

At trial, defendant admitted that she took pictures of the turkey which co-defendant killed. She averred, however, that she "never considered that [she] had possession of that turkey." The State contended defendant did have possession of the bird. It took the position that the turkey was taken illegally because co-defendant was not a Georgia resident, and therefore, he was not entitled to an honorary hunting license. See OCGA §§ 27-2-4 and 27-1-2 (60). Co-defendant asserted he was entitled to the honorary license because he lived in Georgia more than any other place. *Held*:

1. OCGA § 27-1-31 provides, in pertinent part: "It shall be unlawful for any person to make use of or possess any wildlife or parts thereof *which he knows or reasonably should have known have been taken or possessed contrary to any of the wildlife laws, rules, and regulations.*" (Emphasis supplied.) The violation of this statute constitutes a misdemeanor. OCGA § 27-1-38. Accordingly, the statute is to be construed strictly and the burden is on the State to prove the guilt of the defendant just as in an ordinary criminal prosecution. See

*Crosby v. State*, 121 Ga. 198 (48 SE 913).

2. Defendant contends the evidence was not sufficient to show she had possession of the turkey. We disagree. "[A] person who knowingly has direct physical control over a thing at a given time is in actual possession of it. A person who, though not in actual possession, knowingly has both the power and intention at a given time to exercise dominion or control over a thing is then in constructive possession of it. The law recognizes that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons shared actual or constructive possession of a thing, possession is joint." *Thomas v. State*, 153 Ga. App. 686, 689 (266 SE2d 335). Accord *Anderson v. State*, 166 Ga. App. 459, 460 (3) (304 SE2d 550). Viewing the evidence favorably to the State, we think it was sufficient to enable the jury to find beyond a reasonable doubt that defendant constructively shared possession of the turkey with co-defendant. It was demonstrated that defendant and co-defendant cooked and ate the game which co-defendant killed; that defendant knew he was going to hunt a turkey on the morning in question; that defendant waited for him during the hunt; and that defendant shared in his accomplishment. At no time did defendant show a lack of interest in co-defendant's excursion. Defendant's joint constructive possession can be inferred from these facts and circumstances. *State v. Ballou*, 238 A2d 658 (Vt. 1968).

3. Even when we view the evidence in favor of the State, however, we cannot conclude that it was sufficient to enable the jury to find defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). Why? Because there was no showing that defendant knew or reasonably should have known that the turkey was taken in violation of the law. OCGA § 27-1-31.

The State contends the evidence shows defendant knew or reasonably should have known that co-defendant was a nonresident and that he was not entitled to an honorary hunting license. We recognize, of course, that defendant is presumed to have known that a nonresident cannot obtain an honorary hunting license. See *Hutchings v. Roquemore*, 164 Ga. 637, 638 (139 SE 216). See also *Thomas v. Byrd*, 107 Ga. App. 234, 236 (129 SE2d 566). Nevertheless, the State's contention must fail.

In the first place, the prosecution failed to demonstrate whether defendant even knew what kind of hunting license co-defendant was issued. In other words, no evidence was introduced showing that defendant knew or reasonably should have known that co-defendant was hunting with an honorary license. Even if there was such evidence, we think the evidence failed to show beyond a reasonable doubt that defendant knew or reasonably should have known that co-

defendant was not a Georgia resident.

The evidence demonstrated that co-defendant travelled around the country in his van and that he lived in Georgia more than any other place during the previous two years; that co-defendant used an address in Georgia; that defendant knew co-defendant used the Georgia address; and that defendant knew he stayed in Georgia more than any other place. Although co-defendant had a Virginia driver's license, defendant knew that he never lived at the address which appeared on the license.

We think that these facts reasonably could have led defendant to the conclusion that co-defendant in fact was a Georgia resident. We do not think it was incumbent upon defendant to conduct a thorough examination of her companion's status before accompanying him on his hunting expeditions.

The State failed to show beyond a reasonable doubt that defendant knew or reasonably should have known that the turkey was taken illegally. Accordingly, defendant's conviction must be overturned.

*Judgment reversed. Pope, J., concurs. Carley, J., concurs in the judgment only.*

DECIDED APRIL 8, 1986.

*Randall E. Chew,* for appellant.
*Bruce W. Kirbo, Solicitor,* for appellee.