State v. Weber.

THE STATE v. ANTON WEBER, Appellant.

Division Two, June 11, 1907.

1. **STATUTE: Title: Game Animals: Deer.** The term "game animals," used in the title to the statute, includes all kinds of deer within this State, whether wild or reduced to captivity and domesticated; and, therefore, a section of the statute, forbidding any person "to have in his possession or to transport at any time the carcass of a deer, or any portion of such carcass, unless the same has thereon the natural evidence of its sex," is not broader than its title, even though it be held to include tame and domesticated deer.

2. **DEER: Title: Right to Regulate.** No owner of deer raised in captivity has a better title thereto than has the hunter at common law to the deer captured or killed by him; and the State has authority, by statute, to regulate the sale of such game, or to prohibit it altogether.

3. **———: Preservation: Evidence of Sex.** The end or object of the law being the preservation and protection of game animals, the provision inhibiting the possession by anyone of the carcass of a deer which has not thereon the natural evidences of its sex, is a means to that end.

4. **———: Ferae Naturae.** Deer come within the meaning of the term "game," which means animals *ferae naturae*, or wild by nature; and it makes no difference whether the deer in ques-

tion were raised in captivity and had become tame and even domesticated, for deer are naturally wild.

5. ———: **Ownership and Sale.** A person who raises deer and holds them in captivity has the same right to sell and deliver them that he has to sell and deliver any other property he owns and possesses; but deer is game, and the Legislature has the power, for the preservation and protection of game, to make it unlawful for any person who has bought such domesticated deer to have in his possession the carcass thereof which has not thereon the natural evidences of its sex. Such a restriction is clearly within the police powers of the State.

6. ———: ———: **Police Regulation.** Rights in private property must, to a reasonable extent, yield to the public welfare. The protection of game is a public advantage, to which private interests may be made to yield to some extent. The Legislature may enact a reasonable regulation to prevent an easy evasion of the law and a defeat of its purpose to protect and preserve game, and in doing that it may make it unlawful for any person to have in his possession the carcass of a deer, which does not have on it the natural evidences of its sex, whether the deer was a wild or a domesticated one, and the Game and Fish law of 1905 does that and is valid in that respect.

Transferred from Kansas City Court of Appeals.

AFFIRMED.

*Chas. B. Adams* and *Wash Adams* for appellant.

(1) The deer in controversy were not game animals in the ordinary and accepted meaning of the term, and were not embraced in, or germane to, the subject of the game law, as expressed in its title, and were not, therefore, within the provisions of said law. Laws 1905, p. 158; sec. 28, art. 4, Con. of Mo. (2) The word "deer" as used in the body of the act should be harmonized with the term "game animals," as used in the title, and to this end it must be confined to game or wild deer, and cannot be construed to comprehend deer in captivity, which have been reclaimed from their wild state and lawfully reduced to private ownership, without making the act broader than its title, and rendering

State v. Weber.

it *pro tanto* unconstitutional. State ex rel. v. Saline County, 51 Mo. 350; State v. Baker, 129 Mo. 482; State v. Coffee Co., 171 Mo. 634. (3) At the time the game law became effective said deer were completely reclaimed and were held and possessed with all the usual indicia of private ownership, attending the ownership of domestic animals, and were not and could not be lawfully classed as game animals. State v. Crosby, 121 Ga. 198; Bouvier's Law Dictionary, Title, Game; 14 Am. and Eng. Ency. Law (2 Ed.), 654, 657; Anderson's Law Dictionary, Title, Game Laws; Ullery v. Jones, 81 Ill. 403; State v. Crenshaw, 22 Mo. 457; Heywood v. State, 41 Ark. 479; Manning v. Mitcherson, 69 Ga. 447; 2 Cyc., 307.

*Isaac B. Kimbrell* and *Bruce Barnett* for the State.

(1) It matters not whether the deer in question come within the meaning of the term "game" or "game animals," or not. The inhibition of the statute applies to "deer," with no qualification as to whether they are wild or tame, or as to whether or not they are game animals. Sec. 13, Laws 1905, p. 158. (2) There is no merit in appellant's contention that the word "deer" as used in the act should be construed to mean wild deer and not to include deer in captivity, for the purpose of harmonizing it with the term "game animals" as used in the title. (3) Deer held in captivity and tamed come easily within the meaning of the term "game" or "game animals." The term "game" is not confined to wild animals but applies to all animals which are *"ferae naturae"* or wild by nature. Bouvier's Law Dictionary, Title, Game; Anderson's Law Dictionary, Title, Game Laws; 14 Am. and Eng. Ency. Law (2 Ed.), 654, 657. Deer are particularly recognized by the courts as being animals *"ferae naturae"* or wild by nature. Re Long Point Co. v. Anderson, 19 Ont. 487. (4) The section of the act under which

appellant was convicted refers to "deer" without quali-
fication or exception; it applies to all deer, whether
wild or in captivity. Com. v. Gilbert, 160 Mass. 157;
Com. v. Look, 108 Mass. 452; State v. Heger, 194 Mo.
707; Haggerty v. Ice Mfg. & Storage Co., 143 Mo. 246;
State v. Randolph, 1 Mo. App. 15; State v. Judy, 7
Mo. App. 524; State v. Farrell, 23 Mo. App. 176; Greer
v. Connecticut, 161 U. S. 519; People ex rel. v. Hester-
berg, 184 N. Y. 126; In re Deininger, 108 Fed. 623.

BURGESS, J.—At the January term, 1906, of the
Jackson County Criminal Court, under an informa-
tion filed by the prosecuting attorney of said county,
the third count of which charged the defendant with
having in his possession the carcasses of three deer
which did not have thereon the natural evidences of
their sex, in violation of section 13 of the act known
as the Game Law, approved March 10, 1905 (Laws
1905, p. 158), the defendant was found guilty as charg-
ed in said third count, and his punishment assessed at
a fine of twenty-five dollars. The cause was tried by
the court, trial by jury having been waived. From the
judgment of the court defendant appealed to the Kan-
sas City Court of Appeals, by which the cause has been
transferred to this court for its determination, sections
15, 20, 21, and 30 of article 2 of the Constitution be-
ing involved.

The evidence on the part of the State showed that
the defendant had in his possession and was offering
for sale at his meat market in Kansas City, on Decem-
ber 14, 1905, the carcasses of eight deer, from which
the natural evidences of their sex had been removed,
Defendant introduced evidence showing that the
which facts were not denied by the defendant.
deer in question had been fawned and raised in cap-
tivity upon a stock farm in Henry county, Missouri,
owned by Mrs. George M. Casey, and were killed there

and their carcasses sold and shipped to the defendant at Kansas City. The deer had belonged to a herd raised upon the Casey farm, and were descended from a pair of tame deer raised as pets some twenty-five years before on the lawn of the Casey home. They were kept in a pasture enclosed by a high fence, were permitted to run with the cattle, were raised under similar conditions and were fed and cared for like cattle. The enclosure in which they were kept was never maintained as a game preserve, nor were the animals raised or used for hunting purposes. The herd at one time had increased to one hundred and fifty head. A number of the deer were killed every year for food purposes, and it had for several years been the custom of defendant, during the holiday season, to purchase a small number of deer from Mr. or Mrs. Casey for sale at his meat market in Kansas City.

The defendant asked the court to declare the law to be as follows:

"The court, sitting as a jury, declares the law to be, that if it appears from the evidence that the deer described in the information against defendant were purchased by defendant from Mrs. George M. Casey for value and were shipped to him from Clinton, Henry county, Missouri, to be sold in the Kansas city market; that said deer consisted of part of a herd of tame or domesticated deer which were bred and raised on the Casey farm near Clinton, Missouri, as domestic animals; that said deer were kept constantly enclosed by fences and were not and had never been permitted to run at large or to be hunted as game; that said herd of deer was the product of a pair of deer raised as pets on the lawn of the Casey home more than twenty years ago, and that a part of said herd were killed annually and sold and shipped to the Kansas City and other markets for food purposes, and that on and prior to June 16, 1905, the date on which the game law of Missouri,

under which the information against defendant was brought, went into effect, the said deer were held by private ownership, legally acquired, then said deer are not within the provisions of said game law, and the defendant is not guilty of the offense or offenses charged in said information and must be discharged.''

This declaration of law was refused, and defendant excepted at the time.

The sections of the act having any connection with this prosecution are as follows:

"Sec. 1.   The ownership of and title to all birds, fish and game in the State of Missouri, not held by private ownership, legally acquired, is hereby declared to be in the State, and no fish, birds or game shall be caught, taken or killed in any manner or at any time, or had in possession except the person so catching, taking or killing or having in possession shall consent that the title to said fish, birds and game shall be and remain in the State of Missouri for the purpose of regulating and controlling the use and disposition of the same after such catching, taking or killing.   The catching, taking, killing or having in possession of birds, fish or game at any time, or in any manner, by any person, shall be deemed a consent of said person that the title of the State shall be and remain in the State for the purpose of regulating the use and disposition of the same and said possession shall be consent to such title in the State.

"Sec. 13.   It is hereby declared unlawful to kill or attempt to kill any deer in the State of Missouri under one year of age.   It is further declared unlawful to kill any deer of any age between the first day of January and the first day of November in each year and for the purpose of preventing the extinction of the species it is hereby declared unlawful to kill any doe.   It is further declared unlawful to make use of any artificial light in hunting or killing deer; and the wearing or

having such light on the head shall be prima-facie evidence of the violation of this section. It is also declared unlawful for any person to wound, kill or capture any deer in the waters of the streams, ponds or lakes within the jurisdiction of this State, *or to have in possession or transport at any time the carcass of any deer, or any portion of such carcass, unless the same has thereon the natural evidence of its sex.* Any person violating the provisions of this section shall be punished by a fine of not less than twenty-five dollars nor more than one hundred dollars.

"Sec. 43. It shall be the duty of the Game and Fish Warden to enforce all laws now enacted and which may be hereafter enacted for the protection, preservation and propagation of the game animals, birds and fish of this State, and to prosecute, or cause to be prosecuted, all persons who violate such laws. Said Game and Fish Warden may make complaint and cause proceedings to be commenced against any person for the violation of such laws and he shall not be obliged to furnish security for costs. Said Game and Fish Warden shall at any and all times seize any and all birds, animals or fish which have been caught, taken or killed at a time, in a manner, or for a purpose, or had in possession, or which had been shipped, contrary to any of the laws of this State.

"Sec. 45. All birds, animals or fish, seized by the said Game and Fish Warden shall be donated to some charitable institution in the county where such seizure was made. It is hereby made the duty of every warehouse, cold storage plant, merchant or common carrier, agent, servant or employee thereof, to permit the Game and Fish Warden to examine any package in the possession of said warehouse, cold-storage plant, merchant or common carrier, or agent, servant or employee thereof, which the said Game and Fish Warden shall suspect or have reason to believe contains fish,

game or birds protected by the laws of the State, and not entitled under such law to be transported or had in possession, or when the said Game and Fish Warden shall suspect or have reason to believe that the said package is falsely labeled. Any person, firm or corporation refusing the Game and Fish Warden or any officer charged with the enforcement of the fish and game laws permission to examine or open any such package or impede such action by the Game and Fish Warden shall be punished by a fine of not less than fifty dollars nor more than one hundred and fifty dollars. Said Game and Fish Warden shall not be liable for damages on account of any search, examination or seizure made in accordance with the provisions of this act.

"Sec. 71. All bird, game and fish laws or parts of such laws formerly enacted and inconsistent herewith are hereby repealed."

Defendant asserts that the deer in question were not game animals in the ordinary and accepted meaning of the term, and were not embraced in or germane to the subject of the game law, as expressed in its title, and were not, therefore, within the provisions of said law.

Section 28 of article 4 of the Constitution of Missouri provides that "no bill . . . shall contain more than one subject, which chall be clearly expressed in its title."

The title of the act in question is as follows: "An act relating to the preservation, propagation and protection of game animals, birds and fish; creating the office of Game and Fish Warden; creating a game protection fund, and appropriating therefrom."

As is said by counsel for defendant, the above provision of the Constitution has been construed by the Supreme Court to mean that an act cannot be broader than its title, and cannot include within its provisions

any subject which is not embraced in, or germane to, its title. [State ex rel. v. Baker, 129 Mo. 482; State v. Great Western Coffee & Tea Co., 171 Mo. 634.] But we think the title of the act is broad and comprehensive enough to embrace within its meaning all kinds of deer, whether tame or wild. They belong to that class of animals known as game animals; and the Legislature had the right to enact laws for the protection of all deer in order to prevent their extinction. In the case of State ex rel. v. Mead, 71 Mo. 266, it is held: "A provision in an act 'concerning popular elections,' authorizing the Governor to fill vacancies in elective offices, is germane to the general subject, and is valid." The term "game animals," as used in the title of the act, includes all kinds of deer within this State, whether wild or reduced to captivity.

No owner of deer raised in captivity has a better title thereto than has the hunter at common law to the deer captured or killed by him, and it has always been held that the State has authority to regulate the sale of such game, or prohibit it altogether. In Commonwealth v. Gilbert, 160 Mass. 157, it is said: "In order to make the protection of the trout more effectual, it was deemed necessary by the Legislature to punish the sale, during the close season, of all trout except those which are alive. This was probably on account of the difficulty in distinguishing between trout which had been artificially propagated or maintained and other trout. On the construction contended for by the defendant, the law could not be so well enforced." In People ex rel. Hill v. Hesterberg, 184 N. Y. 126, the court says: "To the argument that the exclusion of foreign game in no way tends to the preservation of domestic game, it is sufficient to say that substantially the uniform belief of legislatures and the people is to the contrary, and that both in England and many of the States in this country legislation prohibiting the pos-

session of foreign game during the close season has been upheld as being necessary to the protection of domestic game, on the ground that without such inhibition or restriction any law for the protection of domestic game could be successfully evaded;" citing. Whitehead v. Smithers, L. R. (2 C. P. Div.) 553; Ex parte Maier, 103 Cal. 476; Mayner v. People, 97 Ill. 320; State v. Randolph, 1 Mo. App. 15; Stevens v. State, 89 Md. 669; Roth v. State, 51 Ohio St. 209; Commonwealth v. Savage, 155 Mass. 278. So, in the case of Haggerty v. Ice Mfg. & Storage Co., 143 Mo. l. c. 247, it is said: "It was to prevent the easy evasions of the statute that the law was passed in its present shape. And on this ground it is analogous to statutes prohibiting the manufacture or sale of oleomargarine, and it is the only ground upon which such enactments can be upheld. The end being granted, to-wit, the power of the Legislature to enact a law for the protection and preservation of game; the means to effectuate that end, to-wit, the authority to prevent the law thus passed from being evaded by prohibiting and making penal the possession of game after a certain period, follows as an indubitable corollary." In State v. Randolph, supra, the court says: "The game law would be nugatory if, during the prohibited season, game could be imported from neighboring States. It would be impossible to show, in most instances, where the game was caught."

The end and object of the law, as expressed in the title, is the preservation and protection of game animals, and the provision inhibiting the possession by any one of the carcass of any deer which has not thereon the natural evidence of its sex is a means to that end.

As we have said, the deer in question come within the meaning of the term "game," which means animals *ferae naturae*, or wild by nature. It makes no difference that said deer were raised in captivity and had become tame, they are naturally wild. "There is

no property in wild animals until they have been sub-
jected to the control of man. If one secures and tames
them they are his property; if he does not tame them,
they are still his so long as they are kept confined and
under his control." [Cooley on Torts (2 Ed.), 435;
Manning v. Mitcherson, 69 Ga. 447; Amory v. Flyn,
10 Johns. 102; Com. v. Chace, 9 Pick. 15.] That deer
are animals *ferae naturae* is held by all the authorities,
and disputed by none.

The evidence shows that Mrs. Casey, from whom
defendant bought the deer, was the owner thereof, hav-
ing raised and held them in captivity up to the time
they were sold to defendant. Defendant's ownership
was, therefore, such private ownership in game as is
recognized by the first section of the act. Mrs. Casey
had the same right to sell and deliver the deer to de-
fendant that she had to sell and deliver any other prop-
erty which she owned and possessed; but deer is game,
within the meaning of the act which the Legislature
had the power to enact for the preservation and pro-
tection of game, and the property rights of defendant
in the deer were in no way infringed upon.

That the act prohibits the having in one's pos-
session the carcass of any kind of deer, unless the same
has thereon the natural evidence of its sex, is indispu-
table. The section (13) refers to "any deer," mean-
ing any and all kinds of deer, and regulates the use
thereof under the police power. The privilege of sell-
ing deer is not restricted or qualified by the act, but
it makes it unlawful to have the carcass or any portion
of it in one's possession, unless the same has thereon
the natural evidence of its sex. The section permits
the killing of deer in certain seasons of the year, except
deer under one year of age and does, the provision in
regard to the killing of does being declared to be "for
the purpose of preventing the extinction of the spe-
cies;" and to render effectual the provision as to does,

there is the provision which forbids the possession by any one of the carcass of any deer not having thereon the natural evidence of its sex. These restrictions and regulations do not interfere in any way with his property rights in and use of the deer by the private owner. The provisions of the section are clearly embraced within the police power of the State, under which rights in private property must, to a reasonable extent, yield to the public welfare. Indeed, as said in State v. Judy, 7 Mo. App. 1. c. 525, "The Legislature may, in some cases, pass laws which destroy the right of property. The protection of game is a public advantage, to which private interests may be made to yield to some extent." In Commonwealth v. Gilbert, supra, it is said: "Such laws are not to be held unreasonable because owners of property may thereby to some extent be restricted in its use. It has often been declared that all property is acquired and held under the tacit condition that it shall not be so used as to destroy or greatly impair the public rights and interests of the community. Many illustrations might be cited where such restrictions on the use of property have been held valid. But the cases are familiar. The limitation is that the restrictions must not be unreasonable. The Legislature may 'make, ordain and establish all manner of wholesome and reasonable orders, laws, statutes and ordinances, directions and instructions, either with penalties or without, so as the same be not repugnant or contrary to this Constitution, as they shall judge to be for the good and welfare of this Commonwealth.' [Const. Mass. c. 1, sec. 1, art. 4.] The Legislature may forbid the catching or selling of useful fishes during reasonable close seasons established for them; and to extend the prohibition so as to include such as have been artificially propagated or maintained is not different in principle from legislation forbidding persons from catching fish in streams running through their

own lands. The statute under consideration falls within this power."

We entertain no doubt of the constitutionality of section 13 of the act. The case, so far as the constitutional provision invoked is involved, differs in no material respect from State v. Heger, 194 Mo. 707; Haggerty v. Ice Mfg. & Storage Co., supra; State v. Randolph, supra; State v. Judy, supra; People ex rel. Hill v. Hesterberg, supra; Geer v. Connecticut, 161 U. S. 519; all of which in effect hold that game laws regulating the sale or possession of game imported from other States, where the same was not taken in violation of law, do not interfere with any constitutional rights. While these adjudications recognize that game lawfully taken and acquired in other States is the property of the person taking it, they hold that, under the police power of the State, certain uses of private property may be prohibited by statute for the public good, and that, for the better protection of game within the State, laws may be enacted excluding all game from the markets of the State during certain seasons of the year, or entirely.

If the provision of section 13, which declares it unlawful to have in possession the carcass of any deer which has not thereon the natural evidence of its sex, should be construed as referring to deer in a wild state, and to such only, the evasion of the law would be an easy matter. Suppose the deer which defendant purchased and had in possession had been killed while in a wild state, there is no doubt that, the evidence of sex being removed, he would be guilty of a violation of the law; and, so far as the question of title or ownership is concerned, the title which a person holds to deer which he has raised and kept in captivity is no better than his title to the wild deer which he kills or captures, and reduces to his possession.

Defendant, however, contends that the word

"deer," as used in section 13, should be construed as meaning deer "not held by private ownership, legally acquired," and that, otherwise, the exception contained in section 1 is disregarded and the act brought in conflict with section 21, article 2 of the Constitution, which prohibits the taking of private property for public use without compensation. For reasons already stated, we are unable to concur in this contention.

There is no restriction or burden imposed by the provision of the act which the defendant has been found guilty of violating, save that it declares it unlawful to have in possession the carcass of any deer, or any portion of such carcass, unless the same has thereon the natural evidence of its sex, which, if a burden at all, is a very light and insignificant one, and fully justified as a police regulation.

The judgment should be affirmed. It is so ordered. All concur.