GRATZ v. McKEE et al. *

(Circuit Court of Appeals, Eighth Circuit. April 28, 1919.)

No. 5285.

1. TRESPASS ⬚⟶11—CONVERSION OF "REALTY"—STATUTES—"MUSSEL."
The fresh water "mussel," a shellfish capable of locomotion, usually living in the bed of streams partially covered with mud, being a live animal, cannot be deemed part of the "realty," within Rev. St. Mo. 1909, § 5448, allowing treble damages in certain cases for digging up and carrying away any substance or material, being a part of the realty.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Real Property.]

2. FISH ⬚⟶1—CONVERSION—ACTION FOR VALUE—TITLE—"PEARL FISHING."
In view of Rev. St. Mo. 1909, § 6508, declaring that title to all "birds, fish and game" shall be in the state, and one taking or killing them shall be deemed to have consented that title thereto shall so remain for the purpose of regulation and control, and section 6551, prohibiting pearl fishing at certain times, title to fresh-water mussels taken from a non-navigable river could not be acquired by the owner of the bed of the stream, so as to support an action for the value of the shells; the mussels being animals feræ naturæ, title to which remained in the state, the term "fish" including shellfish, and "pearl fishing" referring to the capture of fresh-water mussels.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Fish.]

In Error to the District Court of the United States for the Eastern District of Missouri; John C. Pollock, Judge.

Action by Benjamin Gratz against James S. McKee and others. Judgment for defendants on a directed verdict, and plaintiff brings error. Affirmed.

S. Mayner Wallace and Shepard Barclay, both of St. Louis, Mo., for plaintiff in error.

Frank H. Sullivan, of St. Louis, Mo. (Hoffman & Hoffman, of Sedalia, Mo., and Jones, Hocker, Sullivan & Angert, of St. Louis, Mo., on the brief), for defendants in error.

Before SANBORN and CARLAND, Circuit Judges, and MUNGER, District Judge.

CARLAND, Circuit Judge. The plaintiff in error (hereafter plaintiff) sued the defendants in error (hereafter defendants) to recover the value of 307½ tons of mussel shells alleged to have been taken from the lands of plaintiff's assignors in Pemiscot county, Mo., and converted to defendants' use. A second count of the complaint alleged that the shells were a part of the realty and were dug up therefrom. The language used in the second count was for the purpose of bringing the case within the provisions of section 5448, Rev. Stat. Mo. 1909, allowing treble damages in certain cases for digging up and carrying away any substance or material, being a part of the realty. The trial court, at the close of the evidence, directed a verdict for the defend-

⬚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing granted November 17, 1919.

ants, for the reason that the plaintiff had shown no title to the shells in his assignors.

Upon the question of title the evidence tended to show that in the years 1913 and 1914 the St. Louis Union Trust Company owned approximately 1,314 acres of land in Pemiscot county, Mo., in township 20, range 12; that the Himmelberger-Harrison Lumber Company owned 125 acres in the same county, in township 20, range 11; that Little river is a stream about 200 miles in length, flowing in a southwesterly direction through a portion of the above-described lands. The river empties into the St. Francois river, and thus finds its way to the Mississippi river and the Gulf of Mexico. The stream is nonnavigable, except in a very restricted sense. Near Wardell, located near the center of section 25, township 20, range 11, of the lands aforesaid, prior to the years 1913 and 1914, there came or grew in the bed of Little river mussels. The shells of live mussels are valuable for use in making so-called pearl buttons. The mussel is boiled for the purpose of removing the meat from the shell. The fresh water mussel is one of the group of mollusks. It is a shellfish capable of locomotion, but disinclined to exercise this power if its supply of food is sufficient where it is. It sometimes floats upon the water, but usually lives in the beds of streams partially covered with mud. The defendants took from the bed of Little river, at a place where plaintiff's assignors were the owners of both banks of the stream, sufficient mussels to produce the number of tons of shells sued for. The plaintiff, by assignment from the owners of the land, became the owner of the claim for damages arising from the taking of the mussels.

[1, 2] So far as the second count of the complaint is concerned, we are of the opinion that it needs no consideration, for the reason that in no view of the case could the live animal called "mussel" be deemed real estate, any more than a ground hog. The question for decision is: Did the owners of the land through which Little river flowed own these shellfish, and hence their shells, so that the plaintiff, as assignee, can maintain an action for their conversion? It appears that the mussels were in their natural state; that is, the owners of the land through which the stream flowed had taken no measures to reduce them to private ownership, nor were they planted where they were found by such owners. As Little river is nonnavigable, we assume that the owners of both banks thereof also owned the bed of the stream. The flowing waters of the stream, however, were public waters, and fish, whether swimming or shell, found therein, could not become, under the laws of Missouri, the subject of private ownership. Sections 6508 and 6551, Rev. Stat. of Missouri 1909, read as follows:

Section 6508: "The ownership of and title to all birds, fish and game, whether resident, migratory or imported, in the state of Missouri, not now held by private ownership, legally acquired, is hereby declared to be in the state, and no fish, birds or game shall be caught, taken or killed in any manner or at any time, or had in possession, except the person so catching, taking, killing or having in possession shall consent that the title of said birds, fish and game shall be and remain in the state of Missouri, for the purpose of regulating and controlling the use and disposition of the same after such catching, taking or

killing. The catching, taking, killing or having in possession of birds, fish or game at any time, or in any manner, by any person, shall be deemed a consent of said person that the title of the state shall be and remain in the state, for the purpose of regulating the use and disposition of the same, and said possession shall be consent to such title in the state."

Section 6551: "It is hereby declared unlawful for any person to engage in what is commonly known as 'pearl fishing' in any of the waters of this state at any time during the months of March, April, May and June. Any person violating the provisions of this section shall be guilty of a misdemeanor, and, upon conviction, shall be fined not less than twenty-five dollars nor more than one hundred dollars for each offense."

At the time section 6508 was enacted neither plaintiff"s assignors, nor any other private individual or corporation, had legally acquired an ownership of the mussels in question. It is no doubt true that the above sections were enacted for the purpose of regulating the capture and sale of the animals therein mentioned. We also understand that "pearl fishing," as used in section 6551, refers to the capture of freshwater mussels such as are described in this case. It therefore appears that the state of Missouri claims the right of regulating the capture of mussels in the public waters of said state. To hold that plaintiff's assignors owned the mussels in controversy would be to decide that said assignors had the exclusive right of fishing in the waters of Little river, where these mussels were found. Such a grant would not be presumed, in the absence of express words, in a grant conveying the exclusive right of fishery. It is very doubtful, also, as to whether any such grant would be valid under the Constitution and laws of Missouri. In the case of McKenzie's Executors v. Hulet, 4 N. C. 613, it was decided that a grant of land covered by an arm of the sea only at high water, would entitle the grantee to an action of trespass for taking oysters from the rocks within the grant. The court also said:

"The right of taking fish in the sea, or the arms thereof, belongs to every one as a common of piscary; but even this may be restrained, where an individual hath gained exclusive property. Hale, De Jure Maris, 11. And this may be acquired by grant or prescription. Ibid. 43. But it being considered as a royalty, it would not pass without special and express words." 2 Bl. 39.

As we understand the record, the grant to plaintiff's assignors did not mention Little river or the waters thereof; neither does it appear from the report of the case above cited what the words of the grant were in that case. The record shows that the lands of plaintiff's assignors were first granted by the United States to the state of Missouri by the act of Congress approved September 28, 1850 (9 Stat. 519, c. 84 [Comp. St. §§ 4958-4960]), relating to swamp lands, then by the state to the county of Pemiscot, from which plaintiff's assignors obtained their title. We find no reason for holding that plaintiff's assignors had by grant or otherwise an exclusive right of fishery in the waters of Little river at any point. These mussels cannot be separated from the waters of Little river, so far as their ownership is concerned. It is true they were found in the bed of the stream, but they could not live without the stream, and plaintiff's assignors could have no exclusive ownership in them independent of the ownership of the water in the stream. The elementary authorities, in our judgment, sustain the views above expressed, and seem to be in line with the statute of

the state of Missouri in regard to the public waters of said state. The term "fish" includes the different kinds of shellfish, such as oysters, clams, and lobster. Moulton v. Libbey, 37 Me. 472, 59 Am. Dec. 57; Caswell v. Johnson, 58 Me. 164; note, 60 L. R. A. 516; 11 R. C. L. 1015. Fish, generically speaking, on account of their migratory character and want of a fixed habitat, are classified as animals feræ naturæ. Their ownership while they are in a state of freedom is in the state, not as a proprietor, but in its sovereign capacity, as the representative and for the benefit of all its people in common, and the ownership thereof may not be claimed by any particular individuals. 11 R. C. L. 1015, 1016; State v. Heger, 194 Mo. 711, 93 S. W. 252; State v. Weber, 205 Mo. 36, 102 S. W. 955, 10 L. R. A. (N. S.) 1155, 120 Am. St. Rep. 715, 12 Ann. Cas. 382.

The difference in the locomotive powers of swimming fish and shellfish, however, justifies a distinction as to their ownership. In their natural state shellfish, like swimming fish, are classified as feræ naturæ, and their ownership is vested in the state in its sovereign capacity. 19 Cyc. 988, B; R. C. L. 1017. Oysters and clams, however, which are planted where they do not naturally grow, and the location of which is marked by posts or otherwise, are the subjects of private ownership. R. C. L. 1018. In Parker v. People, 111 Ill. 588, 53 Am. Rep. 643, the Supreme Court of Illinois said:

"From the wild and wandering nature of fish, they are not, nor can they be, the subject of ownership in running streams, like animals and fowls which have been domesticated. The nature of fish impels them periodically to pass up and down streams for breeding purposes, and in such streams no one, not even the owner of the soil over which the stream runs, owns the fish therein, or has the legal right to obstruct their passage up or down, for to do so would be to appropriate what belongs to all to his own individual use, which would be contrary to common right, and all having a common and equal ownership, nothing short of legislative power can regulate and control the enjoyment of this common ownership."

In Peters v. State, 96 Tenn. 682, 36 S. W. 399, 33 L. R. A. 114, the Supreme Court said:

"Fish in streams or bodies of water have always been classed by the common law as feræ naturæ, in which the riparian proprietor, or the owner of the soil covered by the water, even though he may have the sole and exclusive right of fishing in said waters, has, at best, but a qualified property, which can be rendered absolute only by their actual capture, and which is wholly divested the moment the fish escape to other waters."

The above language of the Supreme Court of Tennessee was fully approved in State v. Theriault, 70 Vt. 617, 41 Atl. 1030, 43 L. R. A. 290, 67 Am. St. Rep. 695.

We are of the opinion that, under the facts of this case, the mussels in controversy were animals feræ naturæ, and no private property existed in regard to them while they remained in a state of nature. From the earliest traditions, the right to reduce animals feræ naturæ to possession has been subject to the control of the law-giving power. Geer v. Conn., 161 U. S. 519–522, 16 Sup. Ct. 600, 40 L. Ed. 793. Speaking generally, and without reference to the rights and legislation of Missouri, the defendants, by killing the mussels and reducing them

to possession, obtained title to the same. 3 C. J. 18. The plaintiff, however, invokes the rule of the common law that, where title to animals feræ naturæ is obtained by taking possession thereof, the taking must not be wrongful and if the taking is effected by one who is at the moment a trespasser, no title to the property is created in him but it vests in the owner of the soil. 3 C. J. 20. And as it appears in evidence in this case that the mussels were taken and boiled on the lands of plaintiff's assignors, the title to the same vested in the plaintiff as the defendants were mere trespassers. We are of the opinion, however, that, whatever might be the effect of the rule stated in general, we think that the legislation of Missouri as hereinbefore quoted would vest the title of the killed mussels in the state, and not in the plaintiff. Plaintiff has cited some English decisions as to the right of fishery in the waters of England, but the difference as to what are private and public waters in England and the United States make the cases cited inapplicable. The public waters of England, so far as the right of fishing is concerned, are separated from private waters by the ebb and flow of the tide. This rule has never obtained in this country, either as to fishing or as to the navigability of streams. In this country, if a stream is navigable in fact, it is so in law.

Our judgment is that the trial court was right in directing a verdict for the defendants, and that the judgment below should be affirmed.

It is so ordered.