## Manning v. Roberts.

(Decided March 1, 1918.)

### Appeal from Clay Circuit Court. -

1. Game—Power to Protect and Legislate—Hunter's License—Game
   Wardens—Statute.—Under subsection 33 of section 1954c of Carroll's Kentucky Statutes which makes it the duty of a hunter to
   have in his possession his license ready to exhibit to any one
   demanding same, as a condition to hunting, it is the duty of
   the hunter to exhibit his license upon the demand of a game
   warden; and, upon his failure to do so, the game warden may
   seize any quail in his possession for the purpose of having them
   condemned, as provided by subsection 13 of said act.

2. Game—Power to Protect and Regulate—Game Wardens.—Under
   subsection 13 of section 1954c of the Kentucky Statutes creating
   a game and fish commission and empowering game wardens to
   seize without process birds or game found in the possession of
   any violator of the law, a game warden is not liable in damages
   where he seized birds in the possession of a hunter who refused
   to exhibit his license.

T. L. EDELEN, I. Y. LYTTLE, A. T. W. MANNING and MANNING
& LYTTLE for appellant.

CLAY & WALL for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

The appellee Elijah Roberts is a district game warden, and resides in Breathitt county. While the appellant A. T. W. Manning and his companion Squire Lewis were hunting quail on the land of Clint Halcomb about two miles west of Manchester on Nov. 17, 1916, Roberts accompanied by Jones and Parker approached Manning and Lewis, saying in substance, "I question your license." Lewis pointed to Jones who was a local game warden and said to Roberts, "That man can tell you about my license"; whereupon Jones said in substance: "Yes, I know both of these fellows, and I know they have licenses for I have seen the record in the county clerk's office."

Manning then felt in his left hip pocket where he usually kept his pocketbook which contained his hunter's license, but as he could not find his pocketbook, he stated to Roberts that he thought he had left his license at home. After, or during the conversation and while Roberts was present, two birds were flushed and killed by Manning.

The five men then returned to the road where Manning's horse was hitched and near a spot in the weeds and grass where Manning had hidden his saddlebags from the boys of the neighborhood. Lewis picked up the saddlebags; and Roberts seeing the feathers and legs of birds sticking out of the saddlebags, he took them from Lewis saying, "What is in these saddlebags"? Manning answered that they belonged to him; that there was nothing in them to which Roberts had any claim; and he requested Roberts to leave them alone. Roberts, however, emptied the birds upon the ground, counted them and then replaced them in the saddlebags which he left with Lewis and Manning. This was done against the protest of Manning. Having found seventeen or nineteen quail in Manning's saddle bags Roberts asked Manning what he had in his coat pockets, whereupon Manning advised Roberts that it was none of his business. Roberts then claimed the right to search Manning's coat pockets, and upon Manning's denial of that right Roberts said he would have to arrest him. But Manning refused to submit to arrest, and being armed and in company with other armed persons, Roberts desisted. Manning then mounted his horse and rode to Manchester. After he had gone a short distance he found his license in the right-hand poc-

ket of his trousers.· He did not, however, return to exhibit it to Roberts. '

Manning instituted this action against Roberts to recover $5,000.00 damages for assault and trespass which consisted of the alleged forceable taking of the saddlebags from the person and possession of Manning and searching them against his will and over his protest. Roberts justified, claiming he acted officially as district game warden in searching Manning's saddlebags; and at the end of all the proof, which showed the facts substantially as above narrated, the circuit court peremptorily instructed the jury to find for the defendant. Manning appeals, the gist of his claim being that Roberts, as district game warden, had no right under the statute to seize and search his saddlebags.

·The uncontradicted proof shows, however, that no assault was committed, and that the case is one of trespass only. So, the only question for decision is: Did Roberts, as game warden, have the right to seize and search Manning's saddlebags for the purpose of ascertaining whether he had violated the game law? If Roberts had that right the trial court properly directed a verdict for the defendant; if not, the case should· have gone to the jury.

The Game and Fish Commission Act of 1912, contains 42 sections ·and now constitutes chapter 57a (section 1954c) of Carroll's Kentucky Statutes of 1915.

Subsection 13 of that act makes it the duty of fish and game wardens and such other persons so appointed by the commission of game and fish "to enforce within this state all laws relating to the protection and preservation" of birds and game. They are further given "the right to arrest on sight and without warrant any person detected by them in the act of violating any such laws; and they shall have authority to seize without process, any birds or game found in the possession" of any violator of the law together with the dogs, guns and other instrumentalities used by the offender. It is further made their duty to forthwith convey the offender before a court or magistrate having jurisdiction of the offense for the purpose of speedily determining the truth of the charge, and if the charge is found to be true the court or magistrate must enter an order declaring the birds, game, dogs, guns and other instrumentalties of hunting so seized to be con-

traband, and directing them to be delivered to the commission of game and fish for disposition.

Subsection 34 of the act provides that any person who hunts in this state without first obtaining a license shall be subject to a fine of not less than $50.00 nor more than $200.00 to which may be added imprisonment in the county jail not exceeding 30 days.

For the purpose of enabling the game wardens and other officers to enforce this statute, subsection 33 further provides:

"No person to whom a license is issued under the provision of this act shall be entitled to hunt, pursue or kill birds or game in this state, without, at the time of such hunting, pursuing or killing of birds or game he has in his possession his license ready to exhibit the same to any one demanding same, and upon conviction thereof shall be fined not less than ten ($10.00) dollars nor more than twenty-five ($25.00) dollars."

And, by chapter 31 of the act of 1916, known as the "Bag-limit" law, it is further provided as follows:

"Sec. 11. Quail or Bobwhite—Bag Limit—No person shall shoot, kill or have in his possession more than twelve quail or bobwhite in any one day, between the fifteenth day of November of any year, and the first day of January of the succeeding year, both days inclusive; provided, however, that any person having hunted two days in succession may have in possession a total of not to exceed twenty-four quail or bobwhite killed by himself during such hunt, and any person having hunted more than two days in succession may have in possession a total of not to exceed twelve quail or bobwhite killed by himself for each day during such hunt." Acts 1916 p. 349.

Roberts insists that Manning violated three statutes: (1) That he was hunting without a license, or if he had a license he refused to exhibit it; (2) that he had in his saddle bags and in his possession more than twelve quail which he had killed on that day in violation of the bag limit act of 1916; and (3) that he refused to submit to arrest by a duly authorized officer.

On the other hand Manning contends there is no power given by the game law authorizing a game warden to search a hunter's saddlebags, and that the only legal way in which the person or property of a hunter can be seized and searched, is under the process of a court of competent jurisdiction and conforming to the fourth

amendment of the federal constitution and section 10 of the Kentucky Bill of Rights, providing that no warrants shall issue to search any place, or seize any person or thing, without describing them as nearly as may be.

And, by a supplemental brief, it is insisted upon the authority of United States v. Boyd, 116 U. S. 616, that the statute, *supra*, is invalid because it authorized a seizure and search solely for the purpose of acquiring evidence to be used against the hunter in violation of the fourth and fifth amendments to the federal constitution.

While we do not think this appeal requires a decision of that question, it may be proper to say in answer to the argument based upon the federal constitution, that the first ten amendments to that instrument were adopted at the first session of congress, and are restrictions upon the powers of the federal government only, and not upon the powers of the states. Barron v. Mayor of Baltimore, 7 Pet. 243; Reed v. Rice, 2 J. J. M. 44, 19 Am. Dec. 122; Livingston v. Mayor, 8 Wend. 85, 22 Am. Dec. 622; Note to State v. Goodwell, 25 Am. St. Rep. 871.

Appellant further contends that subsection 33 of the statute, does not require the hunter to exhibit his license upon the request of the game warden, but only requires him to have it "ready to exhibit" upon demand. We cannot give our assent to this strained construction. What purpose could be intended in requiring the hunter to have his license "ready to exhibit," without exhibiting it? His readiness to exhibit his license would not satisfy the game warden that he had it. It is the existence of the license, shown by its exhibition, that justifies the hunter in killing quail; otherwise he is a violator of the law. When appellant failed to exhibit his license he put himself in the position of a violator of the law which Roberts was sworn to enforce. The fact that appellant failed to find his license did not affect Roberts' position, since he had the right to act upon appellant's failure to exhibit it.

So, the case in so far as Roberts liability is concerned, comes to this: He as a game warden found appellant violating the law in hunting without a license, and having quail in his possession. That fact gave him the right, under subsection 13 of the act, to seize the birds and carry them before a magistrate for trial and condemnation. Consequently in seizing the quail, Roberts did no more than the statute expressly authorized; and it was not an unreasonable seizure denounced by section 10 of the Ken-

tucky Bill of Rights. The fact that Roberts immediately released the birds and left them with appellant did not make unlawful a seizure that had been lawfully made.

The question of the game warden's right to search the person and property of a licensed hunter who exhibits his license, has been argued; but it is not before us and is not decided.

Judgment affirmed.