THE STATE, Appellant, v. W. O. BENNETT.

Court en Banc, November 23, 1926.

**1. GAME AND FISH: Right of State to Count Quail in Possession: Search and Seizure: Self-Incrimination: Valid Statutes.** The statutes relating to the counting by the game commissioner of quail in the possession of a person who has a hunter's license, do not violate the constitutional guaranties against unreasonable searches and seizures and self-incrimination, or deprive him of due process of law or the equal protection of the laws.

**2. ————: Police Regulation: Sovereignty of State: Privilege.** The ownership of game, or animals and birds in their wild state, is in the State, which in its capacity as a sovereign may enact such reasonable regulations and restrictions for their protection and preservation as it may see fit to impose. To hunt and kill game is a privilege, granted either expressly or impliedly by sovereign authority, and not an inherent right in any individual, and consequently nothing is taken from him by reasonable regulations prescribing the terms upon which he can exercise the privilege.

**3. ————: ————: Compulsory Permission to Count Quail in Hunter's Possession: Statutes.** The statutes declare that the ownership of game is in the State, and that no person shall kill or have in his possession any bird except he consent that the title of said game shall be and remain in the State for the purpose of regulating and controlling its use and disposition; that no person shall hunt without first obtaining a license, and then only subject to regulations and restrictions provided by law; that it shall be the duty of every person taking or possessing game to permit the game-and-fish commissioner or his deputies to inspect and count the fish, birds, animals and game, to ascertain whether the restrictions and regulations are being faithfully complied with, and that a refusal to permit such inspection or

count shall be a misdemeanor; and limit the number of quail a licensed hunter may kill or have in his possession in any one day or at one time. **Held,** that said statutes violate no constitutional rights of a licensed hunter, and it was error to quash an information charging a licensed hunter with refusal to permit the deputy game-and-fish commissioner to inspect and count the number of quail in his possession on a certain day.

**4. GAME AND FISH: Police Regulation: Compulsory Permission to Count Quail in Hunter's Possession: Waiver of Constitutional Right.** A defendant by accepting a hunter's license and exercising the privilege of hunting under the restrictions and regulations prescribed by law, one of which makes it his duty to permit the deputy game-and-fish warden to inspect and count the number of quail in his possession, and makes his refusal to permit such refusal unlawful and a misdemeanor, waived the constitutional right to be secure against unreasonable searches and seizures and to refuse to incriminate himself, and cannot assent that such restrictions deprive him of due process of law or equal protection of the laws.

Corpus Juris-Cyc. References: **Constitutional Law,** 12 C. J., Section 190, p. 769, n. 34. **Game,** 27 C. J., Section 2, p. 942, n. 11; Section 9, p. 945, n. 53; Section 10, p. 946, n. 63, 67 New, 68, 69; Section p. 954, n. 68 New Section 30, p. 959, n. 59. **Licenses,** 37 C. J., Section 1, p. 167, n. 4. **Searches and Seizures,** 35 Cyc., p. 1269, n. 35, 36.

Appeal from Benton Circuit Court.—*Hon. C. A. Calvird,* Judge.

REVERSED AND REMANDED.

*North T. Gentry,* Attorney-General, and *A. M. Meyer,* Special Assistant Attorney-General, for appellant.

(1) The information is sufficient. It sets forth definitely each and every fact which, by the statute, is a necessary element of the crime; and could be plead in bar of a subsequent prosecution for the same offense. Sec. 5645, R. S. 1919. (2) Title to *naturae ferae* is in the State, and the Legislature may prohibit the taking of game entirely, or permit it as a privilege, under such regulations and restrictions as it sees fit to impose. Sec. 5581, R. S. 1919; State v. Weber, 205 Mo. 36, 10 L. R. A. (N. S.) 1115, 120 Am. St. 715; State v. Heger, 194 Mo. 707; Greer v. Connecticut, 161 U. S. 19, 40 L. Ed. 793; State v. Snowman, 50 L. R. A. 545; State v. Blount, 85 Mo. 543; City of St. Joseph v. Levin, 128 Mo. 588; St. Louis v. Baskowitz, 273 Mo. 543; LaCoste v. Dept. of Conservation, 151 La. 909; Manning v. Roberts, 179 Ky. 550. Where the State has absolute title, substantially as a private proprietor, for the benefit of its own people, it is subject to no restrictions not applicable to other private proprietors. McReady v. Virginia, 94 U. S. 391; People v. Lowndes, 139 N. Y. 455. (3) The Legislature may, in the exercise of its police power, limit the amount of game taken. It may regulate the manner of taking game. State v. Blount, 85 Mo. 543. It may regulate the manner of its disposition. State v. Randolph, 1 Mo. App. 15; Haggerty v. Ice Co., 143 Mo. 246; State v. Weber, 205 Mo. 36; State v. Heger, 194

Mo. 707. (4) The Legislature may enact reasonable laws to prevent the easy evasion of police regulations and game laws, in the exercise of its police power. LaCoste v. Department, 151 La. 909; City of St. Joseph v. Levin, 128 Mo. 594; State v. Weber, 205 Mo. 44; Haggerty v. Ice Company, 143 Mo. 247; State v. Randolph, 1 Mo. App. 15. Pursuant to this power it may require a licensee to permit inspection under penalty when the license is taken subject thereto. Manning v. Roberts, 179 Ky. 550; Lewis v. State, 14 Tex. App. 230; Kieper v. Louisville, 152 Ky. 691; Samming v. Cincinnati, 81 Ohio St. 142., 25 L. R. A. (N. S.) 686. The manner of enforcing game laws and police regulations is in the discretion of the Legislature. People v. Bootman, 180 N. Y. 1, 2 Ann. Cas. 226. (5) Sec. 5645, R. S. 1919, upon which this prosecution is based, does not authorize forcible search, but requires peaceable submission to inspection and count. This is not such a provision for search as is unreasonable in the exercise of the police power under Section 11, Article II, Constitution of Missouri, nor since defendant is not charged with a crime, is it compelling him to be a witness against himself in a criminal case, in violation of Section 23 of Article II. The statute does not provide that game inspected in its operation may be used in a criminal proceeding to convict the defendant of a violation of the game law, but the reasonable assumption is that the information so obtained might be used to secure a revocation of defendant's license, or to enable the game and fish department to estimate the number of quail and other birds killed. In either event, no constitutional provision is violated by this statute. Even though the information obtained were used in a prosecution, such provision would not be unreasonable as an exercise of the police power.

*Henry P. Lay* for respondent.

(1) Sec. 5645, R. S. 1919, violates the provision of Section 11 of Article II of the Constitution of Missouri, "that the people shall be secure in their persons, papers, homes and effects from unreasonable search and seizures." State v. Owen, 259 S. W. 100; State v. Lock, 259 S. W. 116; Boyd v. United States, 116 U. S. 616; Entick v. Carrington, 19 Howell St. Tr. 1029. (2) The legislative attempt to compel a person to produce his property by imposing a penalty for refusing to do so, is as much in violation of the constitutional prohibition against unreasonable searches as the making of such a search. Boyd v. United States, 116 U. S. 616; State v. Owen, 259 S. W. 100; State v. Lock, 259 S. W. 116. (3) Section 5645 is also in conflict with the provision of Section 23 of Article II of the Constitution which provides "that no person shall be compelled to testify against himself in a criminal case." Boyd v. United States, supra; State v.

Owen, supra; State v. Lock, supra; Ex parte Carter, 166 Mo. 604; State ex rel. v. Simmons Hdw. Co., 109 Mo. 118. And a person may not be compelled to furnish any one of the links necessary to a conviction. Ex parte Carter, supra; Ex parte January, 295 Mo. 653. (4) Constitutional provisions for the security of person or property should be liberally construed for the protection of the citizen. Boyd v. United States, supra; Salter v. State, 2 Okl. Cr. 464.

HIGBEE, C.—An amended information was filed charging that defendant, having procured a hunter's license in Benton County, refused to permit the deputy game-and-fish commissioner to inspect and count the number of quail in defendant's possession on November 10, 1925. The court sustained a motion to quash the information on the grounds that Section 5645, Revised Statutes 1919, is in conflict with the provisions of Sections 11 and 23 of Article 2 of the Constitution of Missouri; that it "deprives the defendant of the equal protection of the law," and because the information does not state facts sufficient to constitute an offense under the Constitution and laws of Missouri. An exception was saved, the defendant was discharged, and the State appealed.

The applicable provisions of the Fish and Game Act (R. S. 1919) are:

"Sec. 5581. *Title to birds, fish and game in state.*—The ownership of and title to all birds, fish and game, whether resident, migratory or imported, in the State of Missouri, not now held by private ownership, legally acquired, is hereby declared to be in the State, and no fish, birds or game shall be caught, taken or killed in any manner or at any time, or had in possession, except the person so catching, taking, killing or having in possession shall consent that the title of said birds, fish and game shall be and remain in the State of Missouri, for the purpose of regulating and controlling the use and disposition of the same after such catching, taking or killing. The catching, taking, killing or having in possession of birds, fish or game at any time, or in any manner, by any person, shall be deemed a consent of said person that the title of the State shall be and remain in the State, for the purpose of regulating the use and disposition of the same, and said possession shall be consent to such title in the State."

Section 5596 limits the number of quail, etc., that a licensed hunter may kill or have in his possession in any one day or at one time.

"Sec. 5598. *License to hunt or fish.*—It shall be unlawful for any person after the passage of this article to hunt or fish in this State without first obtaining a license permitting him or her to do so; such license shall be dated when issued and shall authorize the person named therein to hunt and fish during the calendar year of issue, and then subject only to the regulations and restrictions as provided by

law: *Provided,* no license shall be required to fish in privately owned lakes or ponds where a fee is charged for the privilege of fishing. [Laws 1919, p. 346.]"

"Sec. 5645. *Inspection and counting of birds, animals, and game— penalty.*—It is hereby made the duty of every person participating in the privileges of taking or possessing fish, birds, animals, and game, as permitted by this article, to permit the game and fish commissioner or his deputies to inspect, and count such fish, birds, animals, and game, to ascertain whether the requirements of this article are being faithfully complied with. Any person who shall refuse to comply with a demand to permit such inspection and count by any authorized officer of this State, or who shall interfere with such officer or obstruct such inspection or count shall, be guilty of a misdemeanor, and upon conviction, shall be fined not less than twenty-five dollars nor more than one hundred and fifty dollars. [Laws 1915, p. 295.]"

It is argued by respondent that Section 5645, supra, is repugnant to the provisions of Sections 11 and 23 of Article 2 of the Constitution of Missouri, that the people shall be secure in their persons, papers, homes and effects from unreasonable searches and seizures, and that no person shall be compelled to testify against himself in a criminal case.

In Boyd v. United States, 116 U. S. 616, cited by respondent, an order had been made by the trial court on motion of the Government attorney requiring the defendant to produce in court his private books, invoices and papers; otherwise the allegations of the attorney would be taken as confessed in accordance with the provisions of the act under which the order was made. It was held that this was tantamount to an unreasonable search and seizure of the private papers of the accused and violative of the Fourth and Fifth Amendments of the Federal Constitution. In the course of· the opinion, Mr. Justice BRADLEY said: "The search for and seizure of stolen or forfeited goods, or goods liable to duties and concealed to avoid the payment thereof, are totally different things from a search for and seizure of a man's private books and papers for the purpose of obtaining information therein contained, or of using them as evidence against him. The two things differ *toto coelo.*" See also 35 Cyc. 1268, IV.

The Boyd case, supra; State v. Owens, 302 Mo. 348, 259 S. W. 100; State v. Lock, 302 Mo. 400, 259 S. W. 116, and similar cases, are clearly distinguishable in principle and not applicable to the case in hand.

Section 5581, supra, provides: "The catching, taking, killing or having in possession of birds, fish or game . . . by any person, shall be deemed a consent of said person that the title of the State shall be and remain in the State for the purpose of regulating the use and disposition of the same, and said possession shall be consent to such title." The license issued to the defendant authorized him to

hunt and kill subject to the regulations and restrictions provided by law. Section 5645 makes it the duty of every person participating in the privilege of taking or possessing fish, birds, etc., to permit the game and fish commissioner or his deputies to inspect and count such fish, birds, etc., to ascertain whether the requirements of the article are being faithfully complied with, and imposes penalties for a refusal to permit such inspection and count. The State contends these are reasonable police regulations to prevent evasions of and for the effectual enforcement of the act; that defendant had no interest whatever in the quail that he may have taken; that he simply had a privilege to kill or have in his possession a limited number on any one day; that he accepted his license under the terms, restrictions and limitations of the law, and consented in advance that the game warden might at any time count the quail in his possession and that such inspection and count of the quail in the defendant's possession, so taken and accepted under the provisions of the act, were not an unreasonable search or seizure, but that such requirement was a reasonable and necessary police regulation for the enforcement of the statute.

In Haggerty v. St. Louis Ice Mfg. & Storage Co., 143 Mo. 238, 44 S. W. 1114, the plaintiffs had lawfully purchased a large quantity of game during the open season. At the end of the season they stored it with the defendant, a cold storage company, to be withdrawn in good condition at the end of the closed season. When the game was returned it was found to be spoiled and worthless. Plaintiffs sued for damages. The statute made it a misdemeanor to purchase or have in possession or sell such game during the closed season. It was held that plaintiffs had no property right in the game held over after the end of the open season and were not entitled to recover damages. In delivering the opinion of the court, Judge SHERWOOD quoted at length from the decisions of other jurisdictions. On page 243 the learned jurist said: "As shown by the very interesting and exhaustive opinion of Mr. Justice WHITE in Geer v. Connecticut, 161 U. S. 519, 'from the earliest traditions the right to reduce animals *ferae naturae* to possessions has been subject to the control of the law giving power.'"

Again, on page 244:

"This prerogative of the king as an attribute of government recognized and enforced by the common law of England by appropriate and often times by severe penalties and forfeitures, was vested in the Colonial governments of this country, and when these governments threw off the yoke of the mother country, that right of sovereignty passed to and was vested in the respective States. This sovereign attribute and power as existent in the States of this Union has often been exercised by them by passage of laws in the most of these States, for the protection and preservation of game; and it seems never to have been called in question. Numerous adjudications attest this fact. In such cases the common ownership of game which otherwise

would remain in the body of the people, is lodged in the State to be exercised like all other governmental powers in the State in its sovereign capacity, to be exercised in trust for the benefit of the people and subject, of course, to such regulations and restrictions as the sovereign power may see fit to impose. Such regulations appropriately fall within the domain of the police power of the State.

"In Ex parte Maier, 103 Cal. 476, it is said: 'The wild game within a State belongs to the people in their collective, sovereign capacity. It is not the subject of private ownership, except in so far as the people may elect to make it so; and they may, if they see fit, absolutely prohibit the taking of it, or traffic or commerce in it if deemed necessary for its protection or the preservation of the public good.' Expressing the same view, it is said by the Supreme Court of Minnesota: . 'We take it to be the correct doctrine in this country, that the owner-ship of wild animals, so far as they are capable of ownership, is in the State, not as a proprietor but in its sovereign capacity as the representative and for the benefit of all its people in common.' [State v. Rodman, 58 Minn. 393.] In Magner v. People, 97 Ill. 320, in passing upon the subject now under consideration, it is said: 'Stated in other language, to hunt and kill game is a boon or privilege, granted either expressly or impliedly by the sovereign authority—not a right inherent in each individual and consequently nothing is taken away from the individual when he is denied the privilege at stated seasons of hunting and killing game. It is, perhaps, accurate to say that the ownership of the sovereign authority is in trust for all the people of the State, and hence by implication it is the duty of the Legislature to enact such laws as will best preserve the subject of the trust and secure its beneficial use in the future to the people of the State. But in any view, the question of individual enjoyment is one of public policy and not of private right.' "

And again, on page 247:

"In this case the statute makes no exceptions to the rigid rule which it prescribes. The acts therein mentioned are unconditionally and absolutely forbidden, and this is so because the Legislature doubtless thought that the best way of accomplishing the result they desired and the only means of accomplishing it. They therefore resorted to arbitrary prohibition. Had *scienter* been required by the statute, its very object would have been defeated, as *scienter* would be in the majority of instances impossible of proof. [1 Whart. Crim. Law (9 Ed.) sec. 88, p. 117.]

"It was to prevent the easy evasions of the statute that the law was passed in its present shape. And on this ground it is analogous to statutes prohibiting the manufacture or sale of oleomargarine (State v. Bockstruck, 136 Mo. 335), and it is the only ground upon which such enactments can be upheld. The end being granted, to-wit, the power of the Legislature to enact a law for the protection and

preservation of game; the means to effectuate that end, to-wit, the authority to prevent the law thus passed from being evaded by prohibiting and making penal the possession of game after a certain period, follows as an indubitable corollary. [Ex parte Marmaduke, 91 Mo. l. c. 262, and cases cited.]''

See also Geer v. Connecticut, 161 U. S. 533; State v. Heger, 194 Mo. 707, 93 S. W. 252; State v. Randolph, 1 Mo. App. 15; People v. Clair, 221 N. Y. 108, L. R. A. 1917F, 766; New York ex rel. Silz v. Hesterberg, 211 U. S. 31; Manning v. Roberts, 179 Ky. 551, 200 S. W. 937, and 27 C. J. 945.

In State v. Weber, 205 Mo. 36, 102 S. W. 955, the defendant had purchased the carcass of a deer that belonged to a herd raised on a farm in Henry County, ''and were descended from a pair of tame deer raised as pets some twenty-five years before on the lawn of the Casey home.'' The law made it a misdemeanor ''to have in possession or transport at any time the carcass of any deer, or any portion of such carcass, unless the same has thereon the natural evidence of its sex.'' Syllabus 6 reads: ''Rights in private property must, to a reasonable extent, yield to the public welfare. The protection of game is a public advantage, to which private interests may be made to yield to some extent. The Legislature may enact a reasonable regulation to prevent an easy evasion of the law and a defeat of its purpose to protect and preserve game, and in doing that it may make it unlawful for any person to have in his possession the carcass of a deer, which does not have on it the natural evidences of its sex, whether the deer was a wild or a domesticated one, and the Game and Fish law of 1905 does that and is valid in that respect.''

In State v. Davis, 108 Mo. 666, 18 S. W. 894, the defendant was indicted as a druggist and pharmacist for refusing to produce before the grand jury the prescriptions filled by him during the previous year when lawfully summoned so to do. A demurrer to the indictment was sustained on the ground that the statute requiring the defendant to produce the prescriptions was in conflict with Section 23 of the bill of rights in that it required the defendant to furnish evidence against himself. The defendant relied on Boyd v. United States, supra. This court held that the duty to produce the prescriptions was imposed upon druggists to prevent abuses of their authority to sell and a condition upon which a sale was authorized, and that the statute requiring the production of the prescriptions was constitutional.

In a recent case we held that an ordinance requiring every junk dealer to keep a book in which shall be recorded the names and addresses of those from whom he purchases any article, and requiring that said book shall at all times be kept open for the inspection of the police or any citizen, does not authorize unreasonable searches and seizures for private purposes, and is not violative of the constitutional provisions concerning unreasonable search and seizure; that no one

has an inalienable right to conduct a junk shop; it is a privilege which may be denied or regulated under the police power for the protection of the public health and the prevention of easy thefts. [St. Louis v. Baskowitz, 273 Mo. 565, 201 S. W. 870.]

It was held in Ohio that an ordinance regulating and licensing chattel mortgage and salary loan brokers, requiring them to file with the auditor of the city weekly statements of loans, to remain on file and open to inspection was not violative of the bill of rights as an unreasonable search. [Sanning v. City of Cincinnati, 81 Ohio St. 142, 25 L. R. A. (N. S.) 686.]

From a consideration of the foregoing rulings and many others that might be cited, we are of the opinion that the defendant, by taking out a license to hunt and kill game, the title to which was in the State, acquired a mere privilege to hunt, subject to the restrictions and limitations of the statute; that the statute requiring him to permit the game commissioner or his deputies to inspect and count the fish, birds, animals and game in his possession to ascertain whether the requirements of the statute were being faithfully complied with is a proper and necessary police regulation to discover and prevent easy evasions of the statute, and is not violative of the constitutional provisions invoked; that the statute, being of general application to all persons alike, is not repugnant to the due-process and equal-protection clauses of the Constitution (Duncan v. Missouri, 152 U. S. 377), and furthermore, that the defendant cannot play fast-and-loose; that by accepting a hunter's license and exercising the privilege under the restrictions and limitations of the statute, one of which was his duty to submit to the inspection and count of the quail in his possession by the game warden, he waived the constitutional rights invoked so far as applicable to the facts in this case.

In Diaz v. United States, 223 U. S. 452, 32 Sup. Ct. 250, in considering the question of the right of the accused to be confronted by a witness against him, the court said: "The view that this right may be waived also was recognized by this court in Reynolds v. United States, 98 U. S. 158, where testimony given on a first trial was held admissible on a second, even against a timely objection, because the witness was absent by the wrongful act of the accused."

The foregoing are all the questions discussed in the brief of learned counsel for the respondent. The information clearly advised the defendant of every element of the misdemeanor charged and is sufficient.

The judgment is reversed and the cause remanded. *Railey, C.,* not sitting.

PER CURIAM:—This cause coming into Court en Banc, the foregoing opinion of HIGBEE, C., delivered in Division Two, is adopted as the opinion of the court. All concur, except *Graves, J.,* absent, and *Otto, J.,* not sitting.